UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


STATE FARM MUTUAL AUTOMOBILE                                    PLAINTIFF
INSURANCE COMPANY



v.                                              CIVIL ACTION NO. 3:13-CV-00229-CRS



JACK CONWAY, ATTORNEY GENERAL
of the COMMONWEALTH OF KENTUCKY, ET AL.                         DEFENDANTS

### MEMORANDUM OPINON

This matter is before the Court on the following motions:

1) a motion for judgment on the pleadings (DN 36) filed by Defendant Nakisha
   Murray ("Murray")
2) a motion for reconsideration (DN 37) filed by Defendant Metro Pain Relief
   Center ("MPRC"); and
3) a motion for leave to file a surreply (DN 43) to the motion for judgment on the
   pleadings filed by Plaintiff State Farm Mutual Automobile Insurance
   Company ("State Farm").

For the reasons set forth below, the Court will:

1) deny the motion for judgment on the pleadings (DN 36);
2) grant the motion for reconsideration (DN 37); and
3) deny as moot the motion for leave to file a surreply (DN 43) to the motion for
   judgment on the pleadings.

### BACKGROUND

This case arises from State Farm's refusal to pay MPRC motor vehicle reparation

benefits to which MPRC claims it is entitled. On August 31, 2012, a motor vehicle operated by

Brittany Harris ("Harris") collided with another vehicle at the intersection of 18th Street and

Saint Louis Street in Louisville, Kentucky. Defendants Gayle Spence ("Spence") and Nakisha

1

Murray ("Murray") were passengers in Harris' vehicle and allegedly sustained injuries as a result of the collision. Shortly after the accident, a representative from the legal financing company "1-866-GET-PAID" arrived on scene and distributed information about the company and its services. Later, Spence and Murray visited the business offices of "1-866-GET-PAID," where they were ultimately referred to MPRC for treatment.

In accordance with its customary practice, MPRC treated Spence and Murray's injuries and then sought to obtain payment from Harris's insurer State Farm. However, upon MPRC's request, State Farm refused payment on the basis of KRS 367.409(4)(b)'s provision that "any charges owed by or on behalf of an individual involved in a motor vehicle accident for services rendered by or on behalf of a person who violates [KRS 367.409(1)] shall be void." KRS 367.409(1), more commonly known as Kentucky's "anti-solicitation" statute, provides that in the thirty days following a motor vehicle accident "a person… shall not directly solicit or knowingly permit another person to directly solicit an individual… involved in a motor vehicle accident for the provision of any service related to a motor vehicle accident." Importantly, however, the term "solicit" as used in the statute does not include "advertising directed to the general public, communications by fire, police, or emergency medical personnel…, and communications by an insurer…" KRS 367.409(2)(b). According to State Farm, MPRC "knowingly requested or permitted 1-866-GET-PAID to solicit…Spence and… Murray…" within thirty days of their motor vehicle accident and is therefore precluded from obtaining reparation benefits under KRS 367.409(4)(b). (Complaint, DN 1, at ¶ 21).

## PROCEDURAL HISTORY

On February 25, 2013, State Farm filed the present action requesting a declaration that KRS 367.409 is constitutional and that the charges claimed by MPRC are therefore void under

KRS 367.409(4)(b). (Complaint, DN 1, at ¶ 25). In response, MPRC counterclaimed for damages based on State Farm's refusal to reimburse them for Spence and Murray's medical expenses, (Answer, DN 15, at ¶¶ 41–47), in addition to requesting a declaration that KRS 367.409 is unconstitutional. On April 17, 2013, State Farm moved to dismiss MPRC's counterclaim on the grounds that Kentucky's Motor Vehicle Reparations Act (the "MVRA") precludes medical service providers from maintaining a direct cause of action against reparation obligors. On May 16, 2013, MPRC moved for judgment on the pleadings with respect to State Farm's request for a declaratory judgment, arguing that KRS 367.409 is unconstitutional and that State Farm's action must therefore be dismissed.

On January 3, 2014, we granted State Farm's Motion to Dismiss on the grounds that the MVRA did not provide MPRC with an independent cause of action against State Farm. (Order, DN 34). Having granted the motion to dismiss, we held that MPRC's Motion for Judgment on the Pleadings was moot to the extent it sought to declare KRS 367.409 unconstitutional, explaining that "Because the statute merely voids charges owed by or on behalf of an individual involved in a motor vehicle accident, and because we have already concluded that State Farm is not directly liable to MPRC, there is no charge or other obligation to which the statute might apply." (Memorandum Opinion, DN 33, at 10) (internal quotation marks omitted).

On January 31, 2014, MPRC filed a motion for reconsideration (DN 37) requesting that the Court revisit its decision to deny MPRC's Motion for Judgment on the Pleadings as moot. According to MPRC, despite its ruling on the motion to dismiss, the Court should have nevertheless addressed the constitutionality of KRS 367.409 because MPRC specifically requested a declaration that the statute was unconstitutional and was therefore entitled to a decision thereon.

Also on January 31, 2014, Defendant Murray filed a motion for judgment on the pleadings (DN 36), arguing that KRS 367.409 is unconstitutional such that any charges owed by State Farm would not be voided by operation of KRS 367.409(4)(b). After briefing, on March 17, 2013, State Farm filed a motion for leave to file a surreply (DN 43) to the motion for judgment on the pleadings.

Having reviewed the parties' briefs and being otherwise sufficiently advised, the Court will now address the motion for reconsideration and the motion for judgment on the pleadings.

## DISCUSSION

### i. Murray's Motion for Judgment on the Pleadings

In her motion for judgment on the pleadings, Murray argues that judgment on the pleadings is warranted because KRS 367.409(1) is unconstitutional such that any charges owed by State Farm would not be voided by operation of KRS 367.409(4)(b). Presumably, Murray seeks to establish that the statute is unconstitutional in order to ensure that State Farm—rather than her—will be obligated to pay MPRC. In reality, however, Murray will not be obligated to pay MPRC regardless of whether the statute is declared unconstitutional. If the statute were upheld, any charged owed by Murray would be voided pursuant to KRS 367.409(4)(b). If the statute were declared unconstitutional, Murray would still not have to pay because State Farm's obligation to pay MPRC on Murray's behalf would not be voided pursuant to KRS 367.409(4)(b).

Because a person cannot challenge a statute as unconstitutional unless she has suffered an "injury in fact," the Court concludes that Murray cannot base her motion for judgment on the pleadings on the alleged unconstitutionality of the statute. As explained by the U.S. Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), "no plaintiff can litigate a case in federal court without establishing constitutional standing, which requires a showing that the

plaintiff has suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Id.* at 560 (internal quotation marks omitted). In the case at bar, Murray has failed to demonstrate that she has suffered or will likely suffer an injury in fact as a result of the operation of the statute. Moreover, unlike MPRC, Murray's freedom of speech rights are unaffected by the statute. For these reasons, the Court concludes that Murray lacks standing to challenge the statute and will therefore deny the motion for judgment on the pleadings. Accordingly, the Court will likewise deny the motion for leave to file a surreply to the motion for judgment on the pleadings.

**ii. MPRC's Motion for Reconsideration**

In its motion for reconsideration, MPRC requests that we revisit our previous ruling (DN 33) that its motion for judgment on the pleadings (DN 23) was mooted by our decision to grant State Farm's Motion to Dismiss MPRC's counterclaim. According to MPRC, regardless of our dismissal of MPRC's counterclaim, we should have reached the issue of whether KRS 367.409 was constitutional because, in addition to asserting a counterclaim, MPRC requested a declaration that the statute was unconstitutional. Because the statute directly affects MPRC's business as well as the exercise of its First Amendment right to freedom of speech, MPRC asserts that it has standing to challenge the statute and that the Court should therefore rule on its request for a declaration that the statute is unconstitutional.

After careful consideration, the Court agrees agrees that MPRC's declaration of rights counterclaim regarding the constitutionality of KRS 367.409(1) should be entertained, especially considering that the same issue is likewise raised by State Farm's own declaration of rights claim (albeit from the opposite perspective). Given that the issue has been fully briefed by both parties, and that Kentucky's Attorney General Jack Conway has refused to defend the statute, the matter

is ripe for decision. Accordingly, the Court will now address whether KRS 367.409 is constitutional.

*a. Constitutionality of KRS 367.409(1)*

MPRC asserts that KRS 367.409(1) is unconstitutional to the extent it violates: 1) the First Amendment; 2) the Due Process Clause of the Fourteenth Amendment; 3) the Equal Protection Clause of the Fourteenth Amendment; and 4) Section 59 of the Kentucky Constitution. Because we conclude that KRS 367.409(1) violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, the Court will not address MPRC's remaining arguments.

**i. First Amendment**

MPRC asserts that the statute fails to pass muster under the applicable standard of constitutional scrutiny. Although both parties agree that the statute must be subjected to *some* level of scrutiny, they disagree regarding which standard is appropriate. Whereas MPRC argues that KRS 367.409(1) constitutes a content-based regulation of speech subject to strict scrutiny, State Farm counters that the statute is merely a regulation of commercial speech and is therefore subject to intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980). Thus, the first issue that must be addressed is the appropriate standard of review by which to judge the constitutionality of the statute. Upon careful review of the parties' arguments and applicable law, the Court agrees with State Farm that *Central Hudson*'s intermediate scrutiny standard is applicable.

**i. Standard of Review**

MPRC argues that "[b]ecause KRS 367.409 imposes extremely broad, content-based suppression of both commercial and non-commercial speech," (Mot. for Judg. on the Pleadings,

DN, at 6), it may only be upheld if it survives strict scrutiny. According to MPRC, KRS 367.409(1) operates as a content-based regulation of speech by forbidding communications regarding "the provision of any service related to a motor vehicle accident," while at the same time "not prohibit[ing] other forms of 'communication' with persons involved in motor vehicle accidents…" (Mot. for Judg. on the Pleadings, DN, at 24). In response, State Farm argues that the regulation extends only to commercial speech because "[t]he communication sought to be regulated is solely for the commercial interests of its speaker and the audience." (Resp. to Mot. for Judg. on the Pleadings, DN 26, at 8). Because only commercial speech is regulated, State Farm argues that *Central Hudson*'s intermediate scrutiny standard is applicable as opposed to the strict scrutiny standard reserved for content-based regulations.

"As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994). In other words, where "the government has adopted a regulation of speech because of disagreement with the message it conveys," *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), the regulation will be considered content based. By contrast, the Supreme Court has characterized commercial speech as speech that does "no more than propose a commercial transaction" or otherwise relates to a "purely economic interest." *Id.* at 762. Thus, in determining whether speech may be characterized as commercial, the Supreme Court has considered the following factors: (1) whether the speech concerns a proposal to engage in commercial transactions; (2) whether the speech references a specific product; and (3) whether the speaker has an economic motivation. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–67 (1983).

In the case at bar, all three factors suggest that KRS 367.409(1) regulates purely commercial speech. First, the statute applies only to persons who "solicit," which KRS 367.409(2) defines as "initiat[ing] communication in anticipation of financial gain or remuneration for value." Based on this definition, the vast majority of the speech covered by the statute will consist of, or at least ultimately result in, proposals to engage in commercial transactions. Second, while the statute does not reference a specific product, it does apply exclusively to a particular type of service—namely, services "related to a motor vehicle accident"—and therefore is likewise inherently restricted to commercial activity. Finally, the definition of the term "solicit" provides that the statute applies only to those acting with an economic motivation because the speaker must "initiate communication in anticipation of financial gain or remuneration of value." KRS 367.409(1). Because all three factors indicate that KRS 367.409(1) extends only to commercial speech, the Court concludes that *Central Hudson*'s intermediate scrutiny standard provides the correct framework for analyzing the constitutionality of KRS 367.409(1).

**ii. *Central Hudson* Analysis**

*Central Hudson* set forth "a four-part analysis for assessing the validity of restrictions on commercial speech." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 68–69 (1983) (internal quotation marks and citations omitted). First, we must determine whether the speech is constitutionally protected, which requires at a minimum that it concern lawful activity and not be misleading. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). Second, we ask whether the governmental interest is substantial. *Id.* If so, we must then determine whether the regulation directly advances the asserted governmental interest, and finally whether it is no more extensive than necessary to serve that interest. *Id.*

The parties do not dispute that the statute regulates speech which is lawful and not misleading. Instead, the main points of contention involve whether the statute advances a "substantial" governmental interest and, if so, whether the means employed by the statute directly advance that interest and are no more extensive than necessary to adequately promote it. As the party seeking to uphold the statute, State Farm bears the burden of establishing that the statute satisfies these requirements. *See Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989) (citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 2277 (1985)).

**A. Substantiality**

The first issue that must be addressed is whether KRS 367.409(1) advances a substantial governmental interest. State Farm argues that the statute advances the state's substantial interest in "protect[ing] the privacy and tranquility of personal injury victims… against intrusive, unsolicited contact by service providers during a vulnerable time period immediately following a motor vehicle accident." (Resp. to Mot. for Judg. on the Pleadings, DN 26, at 13). In response, MPRC argues that this interest "is at best minimal" because "[a]ny person involved in a motor vehicle accident *needs* services and stands to benefit significantly from information about them." (Mot. for Judg. on the Pleadings at 24–25) (emphasis in original). By depriving persons involved in motor vehicle accidents of this vital information, MPRC argues that "many persons injured in automobile accidents… might not realize that they can get treatment under PIP for injuries sustained in car accidents." (Mot. for Judg. on the Pleadings at 25). Accordingly, MPRC claims that the privacy interest does not qualify as a substantial governmental interest within the meaning of *Central Hudson*.

Before reaching the question of substantiality, the Court notes that State Farm has yet to demonstrate that the asserted governmental interest in protecting the privacy and tranquility of motor vehicle accident victims is the actual interest underlying the statute. This failure is important because the party seeking to uphold the statute bears the burden not only of articulating a *plausible* governmental interest, but also of demonstrating that the articulated interest *actually* motivated the legislature's decision to enact the statute. *See Edenfield v. Fane*, 507 U.S. 761, 768 (1993). Although the privacy interest is clearly articulated in its brief, State Farm has provided no evidence whatsoever to suggest that Kentucky's General Assembly actually considered this interest in enacting the statute. Because State Farm bears the burden of proffering such evidence, its failure to do so could itself warrant judgment in favor of MPRC.

As it turns out, however, there is substantial reason to believe that the privacy interest was in fact the *raison d'être* of the statute. While the statute itself contains no explicit declaration of its purposes, statements made by legislators on the floor of the Kentucky Senate clearly reflect that the statute was intended to protect motor vehicle accident victims from undue solicitation. *See* KET Video, Kentucky General Assembly Live: KET Senate Coverage, http://www.ket.org/cgi-bin/cheetah/watch_video.pl?nola=WGAOS+012132&altdir=&template.[1] Thus, although State Farm has failed to satisfy its burden of establishing that the privacy interest actually motivated passage of the statute, the Court will give State Farm the benefit of the doubt and nonetheless assume for the purposes of this decision that the privacy interest has been adequately articulated.

---

[1] For example, Senator Robert Stivers II stated that the statute "has come about due to the circumstance that various groups and people are attempting to contact people to access… what is defined as personal injury protection, or 'PIP,' benefits for the purpose of acquiring or accessing that $10,000 amount without really rendering any type of service…" *See* KET Video, Kentucky General Assembly Live: House Banking & Insurance Committee, http://www.ket.org/cgi-bin/cheetah/watch_video.pl?nola=WGAOS+012073&altdir=&template, at (111:25–112:15). Moreover, discussion of the bill in the House Banking & Insurance Committee, particularly statements made by Representative Jim Gooch Jr., likewise suggests that abusive solicitation of motor vehicle accident victims was the problem sought to be addressed by the statute. *See* KET Video at (33:15–34:25).

Having articulated the privacy interest, State Farm now bears the burden of establishing its substantiality. In attempting to do so, State Farm relies heavily on the U.S. Supreme Court's decisions in *Florida Bar v. Went for It, Inc.*, 515 U.S. 618 (1995), and *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978), as well as the Sixth Circuit's decisions in *Capobianco v. Summers*, 377 F.3d 559 (6th Cir. 2004), and *Silverman v. Summers*, 28 Fed. App'x. 370 (6th Cir. 2001). According to State Farm, these decisions have held nearly identical governmental interests to be substantial within the meaning of *Central Hudson*, and therefore support its argument that the privacy interest constitutes a substantial governmental interest. To properly evaluate this argument, the Court will now review these decisions to determine whether State Farm is correct that they establish the substantiality of the state's interest in protecting the privacy and tranquility of motor vehicle accident victims.

In *Ohralik*, an Ohio attorney challenged a disciplinary rule promulgated by the Supreme Court of Ohio prohibiting attorneys from "recommend[ing] employment… to a non-lawyer who has not sought his advice regarding employment of a lawyer." 515 U.S. at 453 n. 9. Proceeding under *Central Hudson*, the Court found that the state's interests were "particularly strong" because, "[i]n addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed professions." *Id.* at 460. Specifically, the Court noted that "[t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts." *Id.* (internal quotation marks omitted). Thus, the Court concluded that "the State has a legitimate and indeed compelling interest in preventing those aspects of solicitation that involve fraud,

undue influence, intimidation, overreaching, and other forms of vexatious conduct." *Id.* (internal quotation marks omitted).

In *Went for It*, a Florida attorney challenged similar regulations promulgated by the Florida Supreme Court prohibiting attorneys from sending written communications to personal injury victims for the purpose of obtaining professional employment. 515 U.S. at 634. In defense of the regulations, the Bar asserted that they were designed to serve the state's substantial interest "in protecting the privacy and tranquility of personal injury victims and their loved ones against intrusive, unsolicited contact by lawyers." *Id.* at 624. Ultimately, the Court "ha[d] little trouble crediting the Bar's interest as substantial," based on previous decisions holding that "States have a compelling interest in the practice of professions within their boundaries," and that "the protection of potential clients' privacy is a substantial state interest." *Id.* at 625 (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975), and citing *Ohralik*, 436 U.S. at 460). Accordingly, the Court concluded that the state's interest "in protecting the privacy and tranquility of personal injury victims and their loved ones against intrusive, unsolicited contact by lawyers" qualified as a substantial governmental interest under *Central Hudson*. *Id.* at 624.

In *Silverman*, the Sixth Circuit relied on *Went for It* in addressing the constitutionality of a Tennessee statute prohibiting chiropractors from in-person and telephonic solicitation of patients with whom they had no family or professional relationship. 28 Fed. App'x at 371. In defense of the statute, the state articulated several governmental interests which it claimed were substantial under *Central Hudson*, including "protecting the privacy of accident victims, preventing overreaching by chiropractors and their agents, and regulating the profession." *Id.* at 374. While acknowledging that "even a single substantial interest is enough to satisfy… the *Central Hudson* test," *id.*, the Court held that "[t]he district court correctly concluded that each

[of the above-listed interests] is a valid state interest." *Id.* (citing *Bailey v. Morales*, 190 F.3d 320, 323 (5th Cir. 1999)).

In *Capobianco*, the Sixth Circuit addressed the constitutionality of another anti-solicitation regulation which prohibited licensed chiropractors from in-person or telephonic solicitation of "victims of accidents or disasters" within thirty days following the accident or disaster. 377 F.3d at 560. Drawing on *Went for It* and *Silverman*, the Court noted that:

> The *Florida Bar* Court agreed with the Bar that the State has a substantial interest in protecting "the privacy and tranquility of personal injury victims and their loved ones against intrusive, unsolicited contact by lawyers." Importantly, the Court recognized that the regulation at issue there was designed as well to establish standards regulating the practice of law and protecting the reputation of the legal profession, and states have a "compelling interest in the practice of professions within their boundaries, and ... broad power to establish standards for licensing practitioners and regulating the practice of professions."
>
> This circuit has held in [*Silverman v. Summers*] that the State of Tennessee has a substantial interest in "protecting the privacy of accident victims, preventing overreaching by chiropractors and their agents and regulating the profession." The State of Tennessee asserts the same interest in support of the Rule at issue here, and the district court held that the State's interest is substantial. We find no substantive difference between the interest asserted in *Florida Bar* and that asserted here…

*Id.* at 562. (citations and internal quotation marks omitted). Accordingly, the Court concluded that the asserted governmental interest was substantial within the meaning of *Central Hudson*.

Like the regulations at issue in these cases, KRS 367.409(1) seeks to protect a specified class of persons from abusive solicitation in the wake of an accident. Importantly, however, KRS 367.409(1) constrains not just specific professionals such as lawyers, doctors, or chiropractors, but rather all persons soliciting services "related to a motor vehicle accident." Given the emphasis placed by these decisions on the state's interest in regulating the professions which it is responsible for licensing, the Court doubts whether a regulation as broad as KRS 367.409(1) may

be similarly justified. Beginning with *Ohralik* and continuing all the way through *Capobianco*, the focus has remained throughout on the invasion of privacy *by professionals*. Thus, in *Ohralik*, the Court emphasized that "the State bears a special responsibility for maintaining standards among members of the *licensed professions*." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (emphasis added). Similarly, in *Went for It*, the Court recognized a relatively narrow interest "in protecting the privacy and tranquility of personal injury victims and their loved ones against intrusive, unsolicited contact *by lawyers*." (emphasis added).

Moreover, although *Silverman* held that the state's interest in "protecting the privacy of accident victims" was substantial in and of itself, this conclusion was based on the Fifth Circuit's decision in *Bailey v. Morales*, 190 F.3d 320 (5th Cir. 1999), which in turn was based on *Went for It*. A close inspection of this line of authority reveals that, like the interests held to be substantial in *Ohralik*, *Went for It*, and *Capobianco*, the privacy interest held to be substantial in *Silverman* was inextricably linked to the state's interest in regulating licensed professions. Indeed, *Bailey* based its conclusion that "protecting the privacy and tranquility of injured people" was a substantial governmental interest entirely on *Went for It* and *Edenfield*, both of which involved regulations aimed at protecting the privacy and tranquility of injured persons from solicitation *by professionals*. *See Bailey*, 190 F.3d at 323 (citing *Went for It* and *Edenfield* for the proposition that the Supreme Court has recognized the privacy interest as an independently sufficient substantial governmental interest). Thus, the Court concludes that *Silverman*'s reliance on *Bailey* favors an interpretation that restricts the substantiality of the privacy and tranquility interest to those cases where the regulation seeks to preserve the privacy and tranquility of injured persons from intrusion *by state-licensed professionals*.

Finally, although itself based on *Silverman*, *Capobianco* emphasized that the holding in *Went for It* was based on the Court's recognition "that the regulation at issue… was designed… to establish standards regulating the practice of law and protecting the reputation of the legal profession." 377 F.3d at 560. Unlike the court in *Silverman*, *Capobianco* viewed the privacy interest as being rooted in and even inseparable from the state's interest in regulating *professions*. Thus, *Capobianco* further supports the notion that the state's interest in protection the privacy and tranquility of motor vehicle accident victims must be linked to the state's regulation of a licensed profession in order to be deemed substantial.

Understood in these limited terms, these decisions do not establish that protecting the privacy and tranquility of motor vehicle accident victims is *per se* a substantial governmental interest. To the contrary, it appears that the privacy interest has consistently been regarded as secondary to the state's interest in regulating professions. Accordingly, to the extent it applies not only to a specific profession such as lawyers, doctors, or chiropractors, but instead to all persons soliciting services "related to a motor vehicle accident," the Court concludes that the interest served by KRS 367.409(1) is not substantial under applicable Supreme Court and Sixth Circuit precedent.

**B. Direct Advancement**

Assuming *arguendo* that the privacy interest articulated by State Farm qualifies as substantial, the next question would be whether the means employed by the statute directly and materially advance such interest. In deciding this question, the Court is guided by relevant portions of the U.S. Supreme Court's decision in *Florida Bar v. Went for It*, 515 U.S. 618 (1995), as well as the Sixth Circuit's decisions in *Chambers v. Stengel*, 256 F.3d 397 (6th Cir. 2001), and *Capobianco v. Summers*, 377 F.3d 559 (6th Cir. 2004).

In *Went for It*, the Supreme Court began its discussion of the direct-advancement requirement by reviewing its earlier decision in *Edenfield v. Fane*, 507 U.S. 761 (1993). In *Edenfield*, the Court invalidated a Florida regulation prohibiting in-person solicitation by certified public accountants because: 1) the State Board of Accountancy had failed to present evidence demonstrating that "personal solicitation of prospective business clients by CPA's creates the dangers of fraud, overreaching, or compromised independence that the Board claims to fear," *id.* at 771; and 2) "[t]he record [did] not disclose any anecdotal evidence, either from Florida or another State, that validate[d] the Board's suppositions," *id.* Left without an evidentiary basis to support the Board's assertion that the regulation materially advanced its interest in preventing fraud, overreaching, and compromised independence, the Court had no choice but to invalidate the regulation.

Having discussed the shortcomings identified in *Edenfield*, the Court turned to the regulation before it in *Went for It*, ultimately concluding that it did not "suffer from such infirmities." *Went for It*, 515 U.S. at 626. In reaching this conclusion, the Court was persuaded by a lengthy report prepared by the Bar which "contain[ed] data—both *statistical* and *anecdotal*—supporting the Bar's contentions that the Florida public views direct-mail solicitations in the immediate wake of accidents as an intrusion on privacy that reflects poorly upon the profession." *Id.* (emphasis added). Statistically, the Court noted:

> As of June 1989, lawyers mailed 700,000 direct solicitations in Florida annually, 40% of which were aimed at accident victims or their survivors. A survey of Florida adults commissioned by the Bar indicated that Floridians have negative feelings about those attorneys who use direct mail advertising. Fifty-four percent of the general population surveyed said that contacting persons concerning accidents or similar events is a violation of privacy. A random sampling of persons who received direct-mail advertising from lawyers in 1987 revealed that 45% believed that direct-mail solicitation is "designed to take advantage of gullible or unstable people"; 34% found such tactics "annoying or irritating"; 26% found it "an invasion of your privacy"; and 24% reported that it "made you

16

angry." Significantly, 27% of direct-mail recipients reported that their regard for the legal profession and for the judicial process as a whole was "lower" as a result of receiving the direct mail.

*Id.* at 626–27 (citations omitted). Anecdotally, the Court focused on the following evidence:

> With titles like "Scavenger Lawyers" (The Miami Herald, Sept. 29, 1987) and "Solicitors Out of Bounds" (St. Petersburg Times, Oct. 26, 1987), newspaper editorial pages in Florida have burgeoned with criticism of Florida lawyers who send targeted direct mail to victims shortly after accidents. The study summary also includes page upon page of excerpts from complaints of direct-mail recipients. For example, a Florida citizen described how he was "appalled and angered by the brazen attempt" of a law firm to solicit him by letter shortly after he was injured and his fiancee was killed in an auto accident. Another found it "despicable and inexcusable" that a Pensacola lawyer wrote to his mother three days after his father's funeral. Ibid. Another described how she was "astounded" and then "very angry" when she received a solicitation following a minor accident. Still another described as "beyond comprehension" a letter his nephew's family received the day of the nephew's funeral. One citizen wrote, "I consider the unsolicited contact from you after my child's accident to be of the rankest form of ambulance chasing and in incredibly poor taste.... I cannot begin to express with my limited vocabulary the utter contempt in which I hold you and your kind."

*Id.* at 626–27 (citations and internal quotation marks omitted). In sum, the Court held the direct-advancement requirement had been satisfied because, unlike *Edenfield*, there was substantial *empirical* evidence that: 1) there was a serious problem with in-person solicitation; and 2) the regulation would likely alleviate the existing problem.

In *Chambers v. Stengel*, 256 F.3d 397 (6th Cir. 2001), the Sixth Circuit addressed whether a Kentucky statute criminalizing the solicitation of accident victims by attorneys within thirty days of an accident directly advanced the governmental interest "in protecting the privacy of its citizens and the reputation of its attorneys." *Id.* at 404. Relying on *Went for* It, the Sixth Circuit held that the direct-advancement requirement had been satisfied because:

> Defendants have submitted ample evidence establishing that the statutes directly and materially advance the state's interests, including (1) the 106-page Florida study from the *Went For It* case; (2) an affidavit from Kentucky Representative

Lawrence D. Clark, who sponsored the statutes and stated that after he was involved in a vehicular accident, he received at least fifteen solicitation letters from attorneys; (3) an affidavit from the Executive Director of the Kentucky Bar Association setting forth a summary of a Kentucky survey report, which revealed the public's displeasure with attorney solicitation following an accident; (4) articles and letters appearing in The Courier-Journal and the Kentucky Bench and Bar; and (5) statistics of the frequency of automobile accidents in Kentucky. Accordingly, we hold that the record contains more than "mere speculation and conjecture" and that Kentucky's interests in protecting the privacy of its citizens and the reputation of its attorneys are directly and materially advanced by the statutes at issue.

*Id.* (citations omitted). Similarly, in *Capobianco v. Summers*, 377 F.3d 559 (6th Cir. 2004), the Sixth Circuit upheld another anti-solicitation regulation based solely on the following evidence:

newspaper articles documenting both the solicitation of accident victims by chiropractors or their agents and the complaints and problems generated by those solicitations; declarations of individuals complaining about having been contacted immediately after accidents by telemarketers on behalf of chiropractors; and articles from scientific and business publications covering aspects of telephone solicitation relevant to that carried out by chiropractors following accidents or disasters.

*Id.* at 562. Thus, like the Supreme Court, the Sixth Circuit has repeatedly recognized that a combination of statistical and anecdotal evidence may be sufficient to establish that a challenged regulation directly advances an asserted governmental interest.

With this background in mind, the Court now turns to the question of whether KRS 367.409(1) directly and materially advances the asserted governmental interest in protecting the privacy and integrity of motor vehicle accident victims. To support its claim that it does, State Farm has submitted the following evidence: 1) three affidavits of persons involved in motor vehicle accidents describing the inconvenience and annoyance of being immediately solicited for motor-vehicle-related services; and 2) news reports by Wave 3 and WHAS 11 cataloguing the negative experiences of several motor vehicle accident victims subjected to undue solicitation in the aftermath of an accident.

Compared to the surfeit of evidence in *Went for It*, *Chambers*, and *Capobianco*, the evidence relied upon by State Farm is woefully insufficient to establish that the statute directly advances the problem of undue solicitation by persons providing "any service related to a motor vehicle accident." Perhaps most importantly, nothing in the affidavits or the news reports indicates that anyone other than attorneys and chiropractors have been involved in the type of aggressive solicitation sought to be curtailed by the statute. *See* (Rebecca Drye Affidavit, DN 26-6, at ¶¶ 4–6); (Marie Trowell Affidavit, DN 26-6, ¶¶ 12–20); (Keith McElroy, Jr. Affidavit, DN 26-6, ¶¶ 9–14). Because "a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real," *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995), State Farm's failure to show that the solicitation problem is caused not only by lawyers and chiropractors, but by all persons providing "any service related to a motor vehicle," renders insurmountable its burden of establishing that the statute directly advances the privacy interest. After all, a statute surely cannot "directly and materially advance" a non-existent or transitory problem. Therefore, to the extent that KRS 367.409(1) is designed to alleviate a problem which has not been shown to exist, State Farm has failed to carry its burden of demonstrating that the statute directly and materially advances the state's interest in curing a legitimate problem.

## C. No More Extensive than Necessary

Assuming *arguendo* that the statute directly advances the asserted governmental interest in protecting the privacy and tranquility of motor vehicle accident victims, the Court would next determine whether the means employed to accomplish this interest are no more extensive than necessary. As the Supreme Court explained in *Went for It*:

> *Central Hudson*'s [final] prong examine[s] the relationship between the [state's] interests and the means chosen to serve them. With respect to this prong, the

differences between commercial speech and noncommercial speech are manifest ... [T]he "least restrictive means" test has no role in the commercial speech context. What our decisions require, instead, is a fit between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but a means narrowly tailored to achieve the desired objective. Of course, we do not equate this test with the less rigorous obstacles of rational basis review; ... the existence of numerous and obvious less-burdensome alternatives to the restriction on commercial speech is certainly a relevant consideration in determining whether the "fit" between ends and means is reasonable.

515 U.S. at 632 (internal quotation marks, citations, and alterations omitted).

Thus, the critical question becomes whether KRS 367.409(1) achieves a reasonable fit between: 1) the legislative end of protecting persons involved in motor vehicle accidents from undue solicitation; and 2) the means of prohibiting all motor-vehicle-related solicitation of motor vehicle accident victims within thirty days of the accident. Interestingly, MPRC does not directly address this issue, but instead simply asserts in a conclusory fashion that, for reasons set forth in the portion of its brief dealing with overbreadth, "KRS 367.409 is vastly overbroad and cannot be deemed narrowly drawn." *See* (Mot. for Judg. on the Pleadings, DN 23, at 26). To the extent that MPRC's overbreadth arguments address only the alleged vagueness of the statute, *see supra* Section B.i.b, these arguments are inapposite and do not warrant consideration. However, because "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it," *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 71 n. 20 (1983), State Farm bears the burden of establishing that KRS 367.409(1)'s ends-means fit is sufficiently narrowly tailored to pass muster under *Central Hudson.*

State Farm identifies several aspects of the statute which it claims render the statute sufficiently narrowly tailored under *Central Hudson*. First and foremost, State Farm argues that

the statute only applies to communications initiated within thirty days following an accident and therefore permits substantial solicitation to occur outside of this time limit. By including a definite time limit after which solicitation is permitted, State Farm argues that the statute avoids the pitfalls of other, non-temporally-limited anti-solicitation statutes such as that invalidated in *Silverman v. Summers*, 28 Fed. App'x 370 (6th Cir. 2001). Second, State Farm emphasizes that the statute does not apply to general advertising such as that communicated via billboards, bus stops, television ads, and numerous other forms of impersonal advertising. According to State Farm, the availability of such alternative means of solicitation was an important factor in the U.S. Supreme Court's decision upholding a similar anti-solicitation statute in *Florida Bar v. Went for It*, 515 U.S. 618 (1995). Finally, State Farm argues that the $1,000 mandatory fine imposed by the statute represents a reasonable accommodation of the need for effective deterrence while ensuring that violators are not excessively punished.

After careful consideration, the Court concludes that the aspects identified by State Farm do not render the statute sufficiently narrowly tailored. Simply stated, the means employed by the statute cannot be deemed no more extensive than necessary because the statute is both under and overinclusive. As always, the critical question is whether the means employed by the statute are needlessly restrictive of the right to free speech such that they fail to be justified by the state's interest is imposing the restriction—or conversely, whether there exist less restrictive means by which the state's interest could be effectively achieved. Although "the 'least restrictive means' test has no role in the commercial speech context," it remains true that "the existence of numerous and obvious less-burdensome alternatives to the restriction on commercial speech is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *Id.* at 632.

Here, the means employed by the statute are so disproportionately restrictive compared to its legitimate ends that the "fit" between them cannot possibly be characterized as reasonable. On the one hand, State Farm has failed to explain why the state's interest in protecting the privacy and tranquility of motor vehicle accident victims cannot be equally well protected by the less-burdensome alternative of a statute which prohibits solicitation only by those professions or license holders that have been shown to actually engage in abusive solicitation. This failure renders the statute overinclusive. On the other hand, MPRC has called into question the statute's exemption of insurers, and State Farm has again failed to provide a justification therefor. This exemption renders the statute underinclusive for two reasons. First, the statute exempts not only the motor vehicle accident victim's own insurer, but also the insurers of all other persons or entities involved in any way in the accident. This means that the insurers of opposing parties are given free rein to initiate settlement discussions or other communications within the same thirty day period following an accident during which all other commercial entities are prohibited from so doing. Second, the statute exempts the motor vehicle accident victim's own insurer despite the fact that it might be just as likely as an opposing party's insurer to engage in abusive solicitation. Such a situation might arise where an insured is involved in an accident with another person who is either uninsured or underinsured. Because the insured's own insurance company might then be required to pay benefits under the policy's uninsured or underinsured coverages, the insured's *own insurance company* would have an interest in constraining the insured's damage claims and would therefore have the same motivation as other commercial actors to disturb the insured's privacy and tranquility.

Given the under and overinclusiveness of the statute, the Court is unable to conclude that the statute achieves a reasonable fit between its ends and means. Accordingly, the Court holds that KRS 367.409(1) is unconstitutional.

**a. Equal Protection**

MPRC next argues that KRS 367.409(1) violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. According to MPRC, the statute's exemption of insurers amounts to a denial of equal protection of the laws to the extent it "plainly discriminates against the class of all businesses in Kentucky that provide services related to motor vehicle accidents." (Mot. for Judg. on the Pleadings, DN 23, at 24).

The Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). However, the Supreme Court has clarified that "Equal protection does not require that all persons be dealt with identically, but [instead] that a distinction made have some relevance to the purposes for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966). Where a fundamental right is involved, we apply a strict scrutiny standard of review to determine whether the statute is narrowly tailored to achieve a compelling state interest. *See Grider v. Abramson*, 180 F.3d 739, 748 (6th Cir. 1999). However, if the regulation does not involve a fundamental right and is content-neutral, we apply a more relaxed intermediate scrutiny "whereby a restriction will survive constitutional assessment if the implicated measure was narrowly fashioned to further a significant governmental interest." *Id.*

Similarly, in First Amendment cases involving commercial speech, only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values" is required. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *see*

*also Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562–63 (1980). "Because regulation of commercial speech is subject to intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review." *Chambers v. Stengel*, 256 F.3d 397, 401 (6th Cir. 2001) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992). Thus, in resolving MPRC's equal protection challenge, we must determine whether the classifications made in KRS 367.409(1) are narrowly tailored to further a significant governmental interest. *See id.*

In the case at bar, MPRC argues that KRS 367.409(1) violates equal protection by carving out an exception for solicitation by insurers. According to MPRC, the exemption of insurers serves no legitimate governmental interest and thus clearly demonstrates that the statute is not narrowly tailored. In response, State Farm states simply that "For the same reasons that [KRS 367.409(1)] survives First Amendment scrutiny… [it] is… not in violation of the Equal Protection Doctrine." (Resp. to Mot. for Judg. on the Pleadings, DN 26, at 34). However, as previously discussed, those "same reasons" do not adequately justify either: 1) the extraordinary breadth of the statute's application to all persons soliciting "any service related to a motor vehicle;" or 2) the statute's blanket exemption of all insurers and their representatives regardless of the type of coverages involved. To the extent that State Farm has failed to demonstrate that these "distinction[s]… have some relevance to the purposes for which the classification is made," *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966), the Court concludes that KRS 367.409(1) violates the Equal Protection Clause and thus could be invalidated on this basis alone. Thus, even if the statute were not unconstitutional under the First Amendment, the motion for reconsideration would nonetheless be granted on the grounds that the statute violates equal protection.

## CONCLUSION

For the foregoing reasons, the Court concludes that KRS 367.409(1) is unconstitutional and therefore unenforceable under federal law. Accordingly,  the Court will grant the motion for reconsideration.

A separate order will be entered in accordance with this opinion.